No.  A-CV-19-82

## COURT OF APPEALS OF THE NAVAJO NAION

December 22, 1982

Ellen K. HUBBARD, Appellant,

vs.

CHINLE SCHOOL DISTRICT NOS. 24/25,
APACHE COUNTY, AZ and ARA FOOD SERVICES, INC. Appellees.

OPINION

Lawrence A. Ruzow, Esq., and Allen Sloan, Esq., Window Rock, Navajo Nation, Arizona for appellants and A. Dean Rickett, Esq., Flagstaff, Arizona for appellees.

## I.  QUESTION PRESENTED TO THE COURT OF APPEALS

This is an action by two former employees of an Arizona state school district against the school district.  On July 2, 1982 the Chinle District Court, the Hon. Homer Bluehouse presiding, ruled it had personal and subject matter jurisdiction over the cause but it exercised discretion to decline jurisdiction over it.  The sole question on appeal is whether the exercise of such discretion by the trial court was authorized and proper.

## II.  THE FACTUAL SETTING

The facts reviewed here are taken from the pleadings and matters on file in this case, and they are assumed to be true for the sake of this opinion.  Chinle School Districts No. 24 and 25 (the school district) are consolidated and they are organized under the school laws of the State of Arizona.  The school district is composed of an elementary and a high school district serving the Chinle area.  The Chinle Community and its surrounding area are an integral part of the Navajo Nation and its territory, and that area is also organized as the Chinle Agency for the purpose of the governmental business of the Bureau of Indian Affairs and for the purposes of the government of the Navajo Nation.  The Chinle area lies in the heart of the Navajo Nation, and of course the school district lies solely within the territory of the Navajo Nation.  The district operates ten schools and district-wide school programs, and most of the approximately 4,000 pupils enrolled are members of the

Navajo Tribe. Obviously the parents of these Navajo students are for the most part members of the Navajo Tribe, and those parents exercise their dual tribal-state citizenship by voting for members of the school board. The district's approximately 800 employees live and work within the Navajo Nation, and approximately one-half of that number are members of the Navajo Tribe.

The school district receives a great deal of its operational funding from programs of the United States government designed for Indians ( See A.R.S. Sec. 15205 ), and it has admitted it receives funding under a number federal education laws, e.g. 25 U.S.C. Secs. 293a, 452-457. Aside from funding to the school district which is given solely due to the status of the student population as Indians, it receives governmental and quasi-governmental benefits from the Navajo Nation including police protection, fire department protection, utilities (water, gas, telephone, electricity, etc.) and other services. These benefits and services are provided by the Navajo Nation through its divisions, entities or organizations. There are indirect benefits to the school in the form of shopping centers housing, streets and roads, news dissemination and all the other benefits which are supported, provided or encourage by the government of the Navajo Nation.

In short, the school district and its employees exists in a total Navajo environment within the Navajo Nation, and there are few aspects of the operations of the school district which do not affect or are not affected by the government of the Navajo Nation.

The dispute in this case arises from the refusal of the school district, through its school superintendent and its governing board, to renew the contracts of a Navajo plaintiff by the name of Lucille L. Begay and a Navajo plaintiff by the name of Ellen K. Hubbard. Ms. Begay was the personnel director of the school district from 1974 until her contract for the 1981-1982 school term expired, and Ms. Hubbard was the assistant food service director, serving the district four years prior to the termination of her school year 1981-1982 contract. The plaintiffs complain (summing up very briefly) that the refusal to renew the contracts was in violation of the school's Navajo preference policy, the law of the Navajo Nation guaranteeing Navajo preference in employment (including termination) and the guarantee of freedom of expression under Navajo law.

We do not reach the merits of the claims since this opinion is solely one on whether the trial court properly dismissed the case, but all these facts will be assumed to be true for the purpose of deciding the governmental interest of the Navajo Nation in exercising jurisdiction. The facts are important also for the purpose of deciding the claim of a quasi-governmental body of the State of Arizona to immunity from the exercise of our jurisdiction.

III.   THE QUESTION OF JURISDICTION

A.   The Navajo Nation as an Independent Sovereign

As far as the Navajo Nation is concerned, the State of Arizona is a foreign government. While the State of Arizona has yet to recognize the Navajo Nation as a separate sovereign. It does grant comity in the enforcement of Navajo decisions and law in a de facto kind of recogni-

zation of our sovereignty. Begay v. Miller, 222 P. 2d 624, 628 (Arizona, 1950); Brown v. Babbitt Ford, Inc., 571 P. 2d 689, 695 (Ariz. App. 1977). The "comity" granted by the Arizona courts to our statutes and decisions is that they "will give effect to the laws and judicial decisions" of the Navajo Nation "not as a matter of obligation, but out of deference and mutual respect." Brown, Id., p. 695. Where a decision is made within the jurisdiction of the courts of the Navajo Nation, that decision will be recognized as valid by the Arizona courts. Begay, Id., p. 628.

The fact that the Navajo Nation is an independent sovereign, at least as regards the State of Arizona, is clear. A landmark American constitutional case, Worcester v. Georgia, ruled that Indian nations are "distinct, independent political communities, retaining their original natural rights," and that they have ceased to be a state in the international law sense. 6 Pet. 515, 559 (1832). In 1978 the status of the Navajo Nation as a self-governing sovereign was reaffirmed by the United States Supreme Court, and it reaffirmed basic Indian affairs law under the United States Constitution that Indian nations are self-governing under the law of nations-international law. United States v. Wheeler, 435 U.S. 313, 326 (1978). See also Higgins, "International Law Consideration of the American Indian Nations by the United States," 3 Arizona L. Rev. 74 (1961); Institute for the Development of Indian Law, "The Indigenous People of Saskatchewan Take Their Rightful Place in the Community of Man," in Opekokew, The First Nation; Indians Government and the Canadian Confederation, 52 (Federation of Saskatchewan Indians, 1980); Opekokew, The First Nations: Indian Government in the Community of Man, 19-23 (Federation of Saskatchewan Indians, 1982).

The relationship between the State of Arizona and the Navajo Nation is that of two independent sovereigns. As was said in the case Native American Church v. Navajo Tribal Council:

> ". . . Indian tribes are not states. They have status higher than that of states. They are subordinate and dependent nations possed of all powers as such only to the extent that they have expressly been required to surrender them by the superior sovereign, the United States." 272 F.2d 131,134 (C.A. 10, 1959).

Therefore the Navajo Nation stands on the same footing with regard to the state of Arizona when its entities conduct business within the Navajo Nation as a foreign nation which conducts its affairs within the United States. We therefore look to rules of international law to decide whether the trial court properly exercised its discretion.

B. The Exercise of Jurisdiction over a Foreign Government

There is little by way of domestic American law to guide us in ruling on this matter, and the presentations of counsel here, however, scholarly, provide us with little in the way of concrete guidelines.

One case, involving the state taxation of a Mescalero Apache ski resort outside the boundaries of the tribe's reservation, does provide some guidance. Mescalero Apache Tribe v. Jones, 411 U.S. 145 (1973).

There the Supreme Court held that Indians who go beyond their reservation land and their state constitutions, they can regulate activities taking place outside a reservation. Id. at 149-150. The final lesson to be taken from the ruling is that the doctrine of inter-governmental immunity is out of favor and will not be resurrected. Id at 155.

What was true for the Mescalero Apache Tribe should conversely be true for the school district here, and there would appear to be no bar to applying nondiscriminatory (i.e. contract, labor and tort) law to it. Because the State of Arizona has disclaimed control over the Navajo Nation, there is no reason that its governmental entities cannot be regulated when operating within the Navajo territorial jurisdiction.

One noted international scholar has said that "Jurisdiction" refers to particular aspects of the general legal competence of states often referred to as sovereignty.' Jurisdiction is an aspect of sovereignty and refers to judicial, legislative, and administrative competence." Brownlie, Principles of Public International Law, 261 (1966). In discussing jurisdiction the starting point and the presumption is that jurisdiction is territorial . Id. However, in civil cases courts normally look at where the facts in issue took place, as well as questions of allegiance, domicile, submission to the jurisidiction and like matters. Id. at 262.

There are no consistent principles under international law for the exercise of juridiction over the political subdivisions and state agencies of foreign states. Id. at 285. The three approaches are (1) finding immunity in the basis a political subdivision is an organ of a state; (2) finding that sovereignty for the purpose of immunity lies only in the central organs of a state; and (3) looking at the function of the entity in deciding whether it is carrying out political acts (which are immune) or simply administrative acts. Id. The test to be applied would appear to be effective control by the foreign government. Id.

Under federal domestic law it is clear that a foreign government or entity can bring suit in United States courts so long as it is recognized by the United States and at peace with it. Pfizer Inc. v. India, 434 U.S. 308, 320 (1978). The Courts of the Navajo Nation take the same view.

As to allowing suit against a foreign government, there is no command in federal law that the Navajo Nation grant immunity in such suits. "(T)he priviledged position of a foreign state is not in explicit command of the Consititution. It rests on considerations of policy given legal sanction by this Court." National City Bank v. Republic of China, 348 U.S. 356, 359 (1954). Indeed considering the aspects of a waiver of sovereign immunity by the host sovereign, the ability of the foreign sovereign to be sued in its own courts, a lack of impact upon friendly relations and fair play, there is no reason a foreign sovereign cannot be sued. Id. 362-366.

We have no doubt that our courts do indeed have jurisdiction over such suits, and we have no doubt that the tests of the National City Bank case could be satisfied. The Navajo Nation does relax sovereign immunity to the extent of insurance, a school district can be sued in the State of Arizona, and given the facts recited above, fair play would support the extension of jurisdiction. A school district is not so important or central an organ of the government of the State of Arizona that it should be exempted from having its conduct reviewed by the Navajo

Courts. It is indeed not a central organ of the State of Arizona, and the acts complained of here are in no way political. They are acts falling under the law of contract, tort and civil rights.

However there is another important consideration which this court takes into account. That is the doctrine of comity which says that "one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers . . . . have had an opportunity to pass upon the matter." Darr v. Burford, 399 U.S. 200, 204 (1949).

The trial court found there were matters of comity in the relationship between the courts of Arizona and the District Court for the District of Chinle, and that principles of comity require absentation from hearing the cases. In the National City Bank case it was noted that friendly relations with China were a factor in excercising or declining to grant immunity. Above at 365. Our courts should tread lightly in dealing with affairs of relations with foreign governments in the absence of clear indications from the Executive Branch of the Navajo Nation because of the importance of relations with states and their organs. See Id. at p. 361.

Therefore we conclude by holding clearly, with no mistake or misinterpretation to be assumed, that the courts of the Navajo Nation do have jurisdiction over this defendant and that such jurisdiction is fully supported by international and domestic American law. The parties, the events and the operations of the defendant all lie within the Navajo Nation's territory, and since they involve matters of civil rights law, labor policies and the education of children, the subject matter of this suit is clearly within the authority of the Navajo Courts. The entity and the individuals carrying on the work of the entity are within our personal jurisdiction. However, the decision of the trial court to exercise restraint in deference to the courts of te State of Arizona and the United States District Court for the District of Arizona was proper under principles of comity. The District Court had the proper discretion to not exercise jurisdiction in this case, and this court finds no compelling reason to say that the discretion was abused. There may be a case in which considerations of policy and the protection of individual Navajo in and effective forum will require a different outcome, but those matters will be presented on a case by case basis. Further, the courts of the Navajo Nation should not adventure into the field of affairs with state governments without a clear indication from the Chairman of the Navajo Nation, exercising his or her external affairs powers, or the Navajo Tribal Council, exercising its lawmaking authority, that there is a mandate to do so.

Since this opinion deals with a major jurisdictional question we make one further point clear; This opinion does not decide whether the State of Arizona his concurrent jurisdiction over the subject matter of the suits filed in the Chinle District Court. It may well be that the jurisdiction of our courts is exlusive, given the location and subject matter involved. See Fisher v. District Court, 424 U.S. 382 (1976). It may also be argued that the parties involved, Indian plaintiffs and a state school district, somehow provide the basis for the extension of State court jurisdiction. We do not decide that question. We simply rule that our courts have jurisdiction over the subject and over all the parties to the suit. Having decide that our courts do have jurisdiction,

■■■■■■■

we have applied principles of public international law, comity in particular, in order to uphold the use of discretion by the Chinle District Court. Due to the fact that comity is a doctrine which relies upon good will from a foreign sovereign and the policies of the executive and legislative bodies of government, the conduct of the State of Arizona in the future and the guidance of the Navajo Government could require us to arrive at a different conclusion.

Therefore, the judgment of the District Court for the District of Chine is hereby AFFIRMED in accordance with the reasons stated here, and the reasoning of this case as to the proper exercise of comity and abstention is confined to its facts